UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROXANNE LOMELI,

        Plaintiff,

  v.

GOODMAN REAL ESTATE INC;
GRE MANAGEMENT LLC;
BRITTANY RICHARD; JOE
STANLEY; and ROXANE LOERA,

        Defendants.

C23-5578 TSZ

ORDER

THIS MATTER comes before the Court on Defendant GRE Management LLC's ("GREM") motion to compel arbitration and dismiss or stay case, docket no. 27. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Prior to May 2019, Pinnacle Management Services employed Plaintiff Roxanne Lomeli as an Assistant Community Manager at Bellamy Park Apartments in Lakewood, Washington. Norris Decl. at ¶ 2 (docket no. 28). In May 2019, the owner of Bellamy Park Apartments terminated its business relationship with Pinnacle Management Services and entered into a new property management agreement with GREM. Id. at ¶¶ 2–3. GREM offered Pinnacle Management Services employees the opportunity to apply to

ORDER - 1

work for GREM in a similar capacity to their existing position or to apply for other open positions with GREM.  Id. at ¶ 3.  Plaintiff applied for the Assistant Community Manager and the Community Manager positions at Bellamy Park Apartments.  Id. at ¶ 5.

On May 15, 2019, Resource Management, Inc. ("RMI")[1] emailed Plaintiff to offer her a position with GREM.  Norris Decl. at ¶ 6 (docket no. 28); Ex. A to Norris Decl. (docket no. 28-1).  The email provided Plaintiff with a username and personal link to complete the onboarding process required for her employment and instructed Plaintiff that she should complete the onboarding process "as soon as possible or within the first three days of your employment."  Ex. A to Norris Decl. (docket no. 28-1).  The email also provided Plaintiff with contact information for assistance with completing the onboarding process.  Id.

The Issue Resolution Agreement ("Agreement") was one of the documents included as part of Plaintiff's onboarding process.  Ex. B to Norris Decl. (docket no. 28-2).  The first page of the Agreement states in bold lettering:

> **If you wish to be considered for employment you must read and sign the following Issue Resolution Agreement.  This Agreement requires you to arbitrate any dispute related to your application for employment, employment with, or termination from GREM.  By signing this Issue Resolution Agreement, you acknowledge receipt of the ISSUE RESOLUTION RULES.  You should familiarize yourself with these rules.**

---

[1] RMI provides human resources services to GREM's employees and was Plaintiff's co-employer.  Ex. A to Norris Decl. (docket no. 28-1); Ex. E to Norris Decl. (docket no. 36-2).

ORDER - 2

Id. at 1.  The Issue Resolution Rules are included in the final pages of the Agreement.  Id. at 5–13.  The Agreement also states, in bold, that "**[t]he Issue Resolution Agreement and the Issue Resolution Rules affect your legal rights.  You have the right to seek legal advice before signing this Agreement.**"  Id. at 4.

Plaintiff commenced her employment with GREM on May 21, 2019.  Norris Decl. at ¶ 10 (docket no. 28).  Plaintiff signed the Agreement on May 24, 2019.  Norris Decl. at ¶ 10; Ex. B to Norris Decl. at 13 (docket no. 28-2).  Plaintiff resigned from GREM on August 12, 2020.[2]  Norris Decl. at ¶ 11.  GREM now moves to compel arbitration and stay the case.[3]

**Discussion**

Plaintiff raises numerous arguments in opposition to GREM's motion.  See Pl.'s Resp. (docket no. 32).  On review of a motion to compel arbitration, the Court must determine (1) whether Plaintiff's claims fall within the scope of the arbitration agreement and (2) whether the parties entered into a valid arbitration agreement.  Hoober v.

---

[2] On October 29, 2020, Plaintiff filed a charge with the Washington State Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") against Goodman Real Estate Inc. ("GREI").  Norris Decl. at ¶ 12 (docket no. 28); Ex. 12 to Lomeli Decl. (docket no. 34-4).  Plaintiff filed an amended charge against GREI on October 31, 2020.  Norris Decl. at ¶ 12 (docket no. 28); Ex. 13 to Lomeli Decl. (docket no. 34-5).  RMI responded to the charge, identified GREM as Plaintiff's correct employer, and denied all of Plaintiff's allegations.  Norris Decl. at ¶ 12 (docket no. 28).  The EEOC issued a Dismissal and Notice of Rights on March 30, 2023.  Norris Decl at ¶ 12 (docket no. 28); Ex. K to Norris Decl. (docket no. 37-3).

[3] All Defendants have agreed to arbitrate Plaintiff's claims.  Whitworth Decl. at ¶ 4 (docket no. 29).

ORDER - 3

Movement Mortg., LLC, 382 F. Supp. 3d 1148, 1153 (W.D. Wash. 2019); 9 U.S.C. §§ 3 & 4.  The Court addresses the scope of the Agreement and the validity of the Agreement.

**A.      Scope of Agreement**

Plaintiff asserts five claims: (1) race discrimination and/or a hostile work environment in violation of 42 U.S.C. §§ 1981 and 1981a, against all Defendants; (2) retaliation and/or a hostile work environment pursuant to Title VII and the Family Medical Leave Act, 29 U.S.C. § 2612, against GREM and GREI, and the Washington Law Against Discrimination ("WLAD"), against all Defendants; (3) retaliation and/or a hostile work environment pursuant to the Families First Coronavirus Response Act, Family and Medical Leave Act, and/or Washington State Medical Leave Act, against all Defendants; (4) race discrimination and/or hostile work environment, pursuant to 42 U.S.C. §§ 1981 and 1981a, against all Defendants; and (5) retaliation and/or race discrimination in a real estate transaction in violation of the WLAD against GREM and GREI.  Pl.'s Am. Compl. at ¶¶ 4.0–8.8 (docket no. 14).

All five of Plaintiff's claims against GREM fall within the scope of the Agreement, which covers "previously unasserted claims arising under federal, state or local statutory or common law" that "arise out of" or "relate to" Plaintiff's employment with GREM.  Ex. B to Norris Decl. at 5 (docket no. 28-2).  The Agreement also covers Plaintiff's claims against the Defendants that are not parties to the Agreement, which further states that "[a]rbitration shall apply to any and all such disputes, controversies or claims whether asserted against GREM subsidiary or sister company and/or against any employee, officer, alleged agent, director or affiliate in their capacity as such or

ORDER - 4

1  otherwise." Id.  Defendants Brittany Richard, Roxana Loera, and Joe Stanley are or were
2  employees of GREM at the time of Plaintiff's allegations, and Plaintiff's claims against
3  each of them is based on their role as an employee or alleged agent of GREM.  See Pl.'s
4  Am. Compl. at ¶¶ 1.12–1.14 (docket no. 14).  In addition, Defendant Goodman Real
5  Estate Inc. ("GREI") is an affiliate of GREM because GREI is the sole shareholder of
6  GREM.  Corporate Disclosure Statement (docket no. 25).  Thus, all of Plaintiff's claims
7  fall within the scope of the Agreement.

**B.    Validity of Agreement**

"Once a court establishes that a claim is within the scope of an arbitration agreement, the agreement is 'valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.'" Hoober, 382 F. Supp. 3d at 1153–54 (quoting 9 U.S.C. § 2).  Plaintiff raises numerous arguments challenging the validity of the Agreement, none of which have any merit.

**1.    Mutual Assent**

Plaintiff argues that the Agreement is invalid because there was no mutual assent. Pl.'s Resp. at 20–21 (docket no. 32).  A valid contract requires the parties to objectively manifest their mutual assent to its essential terms, generally in the form of an offer and an acceptance.  Cruz v. Chavez, 186 Wn. App. 913, 920–21, 347 P.3d 912 (2015); Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388–89, 858 P.2d 245 (1993).  The bottom of the Agreement, where Plaintiff signed, states: "I have read and agree to the aforementioned terms and conditions of this agreement." Ex. B to Norris Decl. at 13 (docket no. 28-2).  Plaintiff knowingly signed the Agreement on

ORDER - 5

May 24, 2019, nine days after she received it. Id. Plaintiff was given sufficient time to review the Agreement and consider its terms. Thus, Plaintiff agreed to be bound by the terms of the Agreement when she signed the Agreement. See Cruz, 186 Wn. App. at 920–21, 347 P.3d 912 ("[W]here a party has signed a contract, he or she is presumed to have objectively manifested assent to its contents." (citations omitted)).

### 2. Consideration

Plaintiff also argues that the Agreement lacks adequate consideration. Pl.'s Resp. at 22–24 (docket no. 32). The general rule, however, is that contracts signed when an employee is first hired, such as arbitration agreements, are supported by consideration. E.E.O.C. v. Fry's Electronics, Inc., C10-1562, 2011 WL 666328, at *1 (W.D. Wash. Feb. 14, 2011) (citation omitted); see also Briggs v. Serv. Corp. Int'l, No. C22-1646, 2023 WL 2075958, at *6 (W.D. Wash. Feb. 17, 2023) (finding that an arbitration agreement was supported by adequate consideration when the employee signed the agreement several weeks after the offer because the offer was contingent on completing employee onboarding). Plaintiff received an offer of employment from GREM, and the Agreement that Plaintiff was required to sign, on May 15, 2019. Ex. A to Norris Decl. (docket no. 28-1). Plaintiff started her employment with GREM on May 21, 2019, and signed the Agreement on May 24, 2019. Norris Decl. at ¶ 10 (docket no. 28); Ex. B to Norris Decl. at 13 (docket no. 28-2). Because Plaintiff signed the Agreement at the beginning of her employment with GREM, the Agreement was supported by adequate consideration.

ORDER - 6

### 3. Unconscionability

Plaintiff argues that the Agreement is unconscionable. Pl.'s Resp. at 25–33 (docket no. 32). "Washington recognizes two types of unconscionability for invalidating arbitration agreements, procedural and substantive." Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 54, 470 P.3d 486 (2020) (citation omitted). The Court addresses both procedural and substantive unconscionability.

#### a. Procedural Unconscionability

Plaintiff argues that she was not provided with a meaningful choice in signing the Agreement. Pl.'s Resp. at 26 (docket no. 32). "Washington courts evaluating the circumstances surrounding an agreement to arbitrate to determine whether the signer lacked meaningful choice consider (1) the way in which the contract was entered, (2) whether the signer had a reasonable opportunity to understand the terms of the contract, and (3) determine whether the important terms were 'hidden in a maze of fine print.'" Hoober, 382 F. Supp. 3d at 1154–55. "At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement are set forth in such a way that an average person would not understand them." Id. at 1155 (citation omitted).

1    On May 15, 2019, RMI emailed the Agreement to Plaintiff and provided Plaintiff

2 with contact information if she had any questions or concerns.[4]  Ex. A to Norris Decl.

3 (docket no. 28-1).  The Agreement is a stand-alone document, written in normal type-face

4 and font, with no key provisions hidden in fine print.  Ex. B to Norris Decl. (docket no.

5 28-2).  The Agreement states in bold that Plaintiff was agreeing to arbitrate all legal

6 claims arising out of her employment with GREM.  Id. at 1.  The Agreement further

7 states in bold that Plaintiff had the right to seek legal counsel before signing the

8 Agreement.  Id. at 4.  Plaintiff signed the Agreement on May 24, 2019, providing her

9 with ample time to review the Agreement, reach out with questions or concerns, or

10 consult independent legal counsel.  See Adler v. Fred Lind Manor, 153 Wn.2d 331, 349,

11 103 P.3d 773 (2004) (reasoning that a week was ample opportunity to consider and

12 consult counsel about the arbitration agreement).  Thus, Plaintiff fails to demonstrate that

13 the Agreement is not enforceable due to procedural unconscionability.  See Hoober, 382

14 F. Supp. 3d at 1155.

15          **b.     Substantive Unconscionability**

16    Plaintiff argues that substantive unconscionability permeates the Agreement

17 because the Agreement deprives her of the constitutional right to a jury, the Agreement is

18 not mutually appliable to both parties, and the Agreement's statute of limitations is

19 unreasonable.  Pl.'s Resp. at 28–33 (docket no. 32).  "Substantive unconscionability

---

[4] Plaintiff did not reach out for assistance with, or raise questions or concerns about, the onboarding process.  Norris Decl. at ¶ 9 (docket no. 36).

involves 'cases where a clause or term in the contract is alleged to be one-sided or overly harsh.'" Hoober, 382 F. Supp. 3d at 1157 (citation omitted). As an initial matter, Plaintiff knowingly, voluntarily, and intelligently waived her right to a jury trial by signing the Agreement. See Adler, 153 Wn.2d at 360–361, 103 P.3d 773. In addition, the Agreement applies to Plaintiff and GREM as both parties are required to arbitrate claims arising out of Plaintiff's employment. Ex. B to Norris Decl. at 2 (docket no. 28-2). Finally, the Agreement's one-year limitation provision is not unconscionable because it protects Plaintiff's right to have a claim investigated by the EEOC or the Washington Human Rights Commission and incorporates tolling doctrines under state law and Plaintiff's ability to arbitrate continuing violations. Ex. B to Norris Decl. at 3, 6–7 (docket no. 28-2); see also Adler, 153 Wn.2d at 356, 103 P.3d 773 ("Washington courts have established that a contract's limitation provision will 'prevail over general statutes of limitations unless prohibited by statute or public policy, or unless they are unreasonable.'" (citations omitted)). Thus, Plaintiff's arguments lack merit,[5] and the Agreement is not unenforceable due to substantive unconscionability.[6]

---

[5] To the extent that Plaintiff raises additional arguments in opposition to GREM's motion, the Court concludes that those arguments do not render the Agreement unenforceable.

[6] GREM concedes that Rule 9(f)(ii), which limits the arbitrator's authority to adjudicate class actions, and Rule 19, which permits GREM to terminate or modify the Agreement with notice to the employee, "have been successfully challenged in the Ninth Circuit." Def.'s Mot. at 14 (docket no. 27). Plaintiff also argues that the confidentiality clause in Rule 9(g) of the Agreement is unconscionable. Pl.'s Resp. at 32 (docket no. 32). The Court determines that Rules 9(f)(ii), 9(g), and 19 can be appropriately severed from the Agreement without invalidating the entire Agreement. See Adler, 153 Wn.2d at 358, 103 P.3d 773.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) GREM's motion, docket no. 27, is GRANTED.

(2) The Court STAYS the proceedings pending the outcome of arbitration pursuant to 9 U.S.C. § 3.

(3) The parties are DIRECTED to file a Joint Status Report within fourteen (14) days after the completion of arbitration or by June 28, 2024, whichever occurs earlier.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 7th day of November, 2023.

Thomas S. Zilly
United States District Judge

ORDER - 10